Our last case for today is Hinkle v. White. Mr. Roosevelt. Thank you, Judge. If it may please the Court, Counsel, Greg Roosevelt for the appellant, Mr. Hinkle. This case comes from the Southern District Chief Judge Michael Reagan's grant of summary judgment. The appellant, Mr. Hinkle, is a 30-year veteran of the Illinois State Police, retiring after 26 years of service as a Master Sergeant and four years then as a sheriff of a county in Southern Illinois. An investigation was initiated in August 2010 regarding a claim of sexual abuse of a minor, the allegation being Mr. Hinkle was the responsible party. As laid out in Judge Reagan's order, eventually a special prosecutor declined prosecution, and the evidence is that the alleged victim shortly after the investigation began recanted her story. So could I tell you, Mr. Roosevelt, there are a couple of things I want to make sure I understand. In their briefs, your opponents pointed to seven specific statements that, as they understood it, I suppose Mr. Hinkle is complaining about. So I wondered if you think that's an accurate list or whether there's more somehow to the case. And I guess the second point is a more general one. What concerns me about your theory in a word is the Supreme Court's decision in Paul v. Davis and how it is that you are bringing something that can rightly be called a constitutional tort as opposed to something that really should have been brought perhaps as a state defamation action. I mean, nobody questioning that the underlying facts are what they are, but the Constitution doesn't address everything, and the Supreme Court said that in Paul. Legal status hasn't been altered. The problem presented is, as we look at it under DePay v. Samuel, you call someone a sexual offender, a child abuser, you have impugned their integrity and character. No, I understand that, which is certainly why you could have, you know, a defamation action brought on such grounds. But Paul v. Davis says that more than reputational, I mean, even grievous reputational harm, more than that is necessary to state a constitutional claim. What we're seeing then under Townsend is a state actor who has impugned the integrity of Mr. Hinkle, resulting in a deprivation of his career choice or choice of career as a law enforcement officer to continue in that role. When we look at the label of the- But can we pause there because he does wind up with a private investigator license for which one has to have a showing of good moral character. And you've argued because of his age and seniority and the like, the only law enforcement positions that are really appropriate comparators are police chief or other very high managerial positions. But I'm not sure that the law supports such a narrow understanding of job opportunities. Townsend speaks of the chosen occupation of choice. Yeah, but I can't say I've decided to be president of the United States and you're preventing me from doing that. Yes, but if you've put in 26 years, you've retired as a master sergeant, if you've been an executive as a sheriff of a county, then you have the specialty, the experience. And by your age, you're looking then at moving to a position of executive leadership in a law enforcement role. Additionally, under Illinois law, any applicant for a base officer, a foot patrol officer, must be no older than 35 years of age. So what you're left with by law in Illinois and most other states, because obviously the physical demands of a street patrol officer are you need to be in an executive managerial role. Then beyond that, Illinois law fundamentally says... But are we clear that it's appropriate to restrict the scope of possible jobs to, as I say, these kind of police chief sorts of jobs? I mean, he does, I'm sure it wasn't his first choice, but he gets the private investigator license, there's the private sector, there are all sorts of security companies, there are jobs. And indeed, retired military people, retired police officers, are highly desirable employees for many jobs. Certainly, if it is in his chosen career, which is law enforcement. And those qualifications and the characteristics of that work are very different than private detective or private security work. Private security work requires very little education and very little, frankly, experience in an executive leadership role. And the pays and the characteristics of the positions are entirely different. Mr. Johnson, in terms of his testimony, our expert in the area, opined that there are distinctions. They relate to arrest powers and other issues that really do present as fundamental distinctions. By law, Mr. Hinkle, under Illinois law, must be a person of good character, for instance, to be hired as a police agency leader or even any officer. One of the articles that you pointed to, I mean, I want you to get back to this list of seven things in a minute, but I thought one of the articles was actually relatively complementary to Mr. Hinkle and quite critical of White. The conclusion was that there were apparently two officers who were trying to burn one of their cohorts. And the fact is that it became published in the community exactly what the nature of the allegation was, and it linked to Mr. Hinkle. And it was done at the direction to call the reporter was from Mr. White to Greg Hanish. Right, and he probably violated all sorts of confidentiality rules to do what he was doing. But again, we need to link this, if it's a 1983 case, to the Constitution. Right, and that goes to the label, the stigma associated with that label and attaching it to that individual. You didn't bring a supplemental state defamation claim. Is that because the statute of limitations had run? The fact is that our belief was that this was the appropriate cause of action given the liberty interest involved. And we were not in state court, and we brought no supplemental claim. The fundamental point is that once that label attaches, and Mr. Johnson, who was our expert and has a long career with Illinois State Police and Department of Professional Regulation of Pine, virtually impossible with that label. Mr. Grieve, who was a hiring officer for a police agency of Pine, that's the label. When we look at the individual publications, approaching an individual, Mr. Finney at Walmart, to say, hey, a former sheriff has a serious charge, there was a follow-up telephone conversation between White and Finney, Finney being a convicted felon, who he confirmed that this sheriff is going to go to prison. Then Finney reads this article in the newspaper. Discussion with cohorts at Illinois State Police who had nothing to do with the case, just casually. Talking to Mr. Consolving, who was a subordinate in the sheriff's department, and informing him of the specifics of the allegation gratuitously unnecessarily. And you look at, is the communication within the proper channel? Is it through the proper source? Is it done because you have a duty to report it? Is it done in good faith? None of those factors were involved in those communications to all of those third parties. So effectively, they were spreading this about the community, not only the law enforcement community and his own agency, but also the community in a broader sense to label him, defame him. And they had to have known that impacted his ability later to get a job in law enforcement. Thank you. Okay, you can save the rest of your time for rebuttal. Thank you. Mr. Berlow. May it please the court, Illinois Assistant Attorney General Cliff Berlow on behalf of the defendants in this case, Rick White and Thomas Oliverio. The critical fact of this case is the one that Judge Wood alluded to, that there is nothing at all that distinguishes this case from your garden variety state law defamation action. And that fundamentally defeats the plaintiff's argument on really two different levels. First is the one identified by the district court and by the colloquy between Mr. Roosevelt and the court, which is that Mr. Hinkle is unable to satisfy the stigma plus rule of Paul against Davis. So how is that satisfied, though? I mean, what he's really saying is there's no formal disability for these various other jobs. It's not like you have a felony on your record, therefore you can't become a state's attorney or something like that. But as a matter of fact, you could show that somebody who has been alleged to have committed these sorts of crimes is de facto blackballed forever from these things. Why wouldn't that satisfy stigma plus? Well, it wouldn't satisfy it because I think it's fundamentally inconsistent to say it does under Paul against Davis. The plaintiff in Paul against Davis said he was injured. He said he was grievously injured. And the Supreme Court said that doesn't matter, that the Constitution is essentially indifferent to defamation, that that is wholly a matter of State law. And so while it may be that there – maybe that he has – that the type of stigma that has been attached to him under his theory of the case is quite damning, that is simply not enough in and of itself to satisfy the stigma plus rule. And so, Judge Wood, I would say the exact sort of list that you provided is what he had to show. He had to show something similar to a formal legal debarment from being made any sort – working anywhere in the overall field of law enforcement. So he's never arrested on these charges, right? No. That's my understanding. So it's just an investigation, just an investigation. So if there were a job that you had to show that you'd never even been arrested and you had been arrested – some person, not Mr. Hinkle, had been arrested – then you would count that as a change in legal status? Yes. There you can – there is, in the words of this Court and I think consistent with the Supreme Court precedent in this area, there would be a tangible loss of employment opportunity there because you could specifically quantify and you could specifically measure that a type of job was put off limits from you, not just that it was made exceedingly difficult for you to obtain, but that it was formally made off limits. What if it's something like membership in the bar for which one of the hurdles you have to pass is a character and fitness test? Well – So you can't become a member of the bar in Illinois or anywhere else that I know of without passing a character and fitness test, which is definitely in all of the circumstances kind of inquiry by the committee that does that, the committee of the Supreme Court. And so they investigate and they discover that there's been this investigation and they say, we've decided that you don't comply with the character and fitness requirements for admission to the bar. Would you say that's a formal legal status point? No, unless the plaintiff could show that there was some formal requirement within the bar's criteria. The formal requirement is that you have to pass the character and fitness test. Understandable, but that the investigators are precluded from passing you on the character and fitness test based upon an unfounded criminal accusation. That would be the burden in order for it to rise to the level of a federal constitutional claim. The plaintiff still has his claim, his defamation claim in state court. He's not without a remedy here. And that really dovetails with, I think, the other fundamental weakness here, which is the Parrott v. Taylor rule. The plaintiff here, because the defendants, the allegations regarding the defendants would be, quote, random and unauthorized in the rule, in the Parrott v. Taylor rule, the fact that there is an available state law tort means that he has all the process that he is due. And as he can only assert an occupational liberty interest claim as a procedural due process matter, he hasn't been denied anything. And notably, the plaintiff has never identified any process that he believes he was entitled to that he didn't receive. But didn't you argue that if he had tried to bring a defamation action, there would have been a privilege that attended the statements that White and Oliverio were making? Based upon the record here, yes. We argued that at least some of the statements, I don't think we made that as to all seven of the lists that we tried to compile as best we could. But, yes. But that suggests that there is no remedy in state court. If state law erects a privilege, that means you can't pursue the claim. No. What it means is that as long as you can get past essentially the state law equivalent of a 12b-1 action, then for purposes of Parrott v. Taylor, I think you have an adequate procedural remedy available to you. It doesn't mean you have a right to a successful lawsuit. You still have to. No, we've had a number of cases about immunities that are erected, and that's not clear to me. Well, I will agree that it's at least unclear, that there's at least some ambiguity there. And I will throw that in addition, if this had been brought as a state law defamation action because Mr. Henkel was a public figure at the time of the statements, the First Amendment rule of New York Times against Sullivan would apply, and he would have to show actual malice in state law action. Currently here, he doesn't have to do that because there's at least some precedent to suggest that that First Amendment rule does not apply to a procedural due process challenge. I'm a little murky on the rationale, but there's at least one decision from this Court suggesting that's the case. But the fact that the defendants might be able to prevail as a matter of law or based on privilege doesn't mean that you are without a procedural remedy. So long as you can bring a case in state court, you have all the process you're due. So you think nothing but jurisdiction. I mean, the state courts have residual jurisdiction over everything. So that means there's never a federal claim, right, for the unexpected and unusual violation of law. I think that it means that you have adequate procedural due process in the circumstances where a state law tort action will suffice. That's only in those limited circumstances of random and unauthorized conduct. Now, I'll point out that there are three cases that have been cited in the briefs here in which a plaintiff was able to get beyond summary judgment. In each of those cases, I don't think the Parrott rule would bar the claim because none of those were random and unauthorized conduct. One involved the erroneous placement of individuals on a sex offender list. There's nothing random and unauthorized about that. Another was the erroneous placement of someone on a list of child abusers who run daycare centers. There's nothing random and unauthorized about that. So it would seem to line up consistently with the cases where this Court has found that stigma plus is applied. So I don't think in any sense we're eviscerating the tort or we're limiting the tort in any way beyond what the stigma plus rule itself would do. What I'm suggesting is that because there's no distinction at all to be drawn between the plaintiff's theory of this case and an ordinary state law defamation action, that there simply is no constitutional claim here. Unless the Court has any other questions, we're happy to rest on our brief. Apparently not, so thank you very much. Thank you. Anything further, Mr. Rodeville? Just briefly, if I may, thank you for your patience. The fact is the statute, just as a good character requirement of the Illinois Bar, if a police officer calls and requires and demands officers in any police agency in Illinois to be of good character, the fact is DuPay has said clearly if you label him as a child abuser, he's not that. The Parrott situation was a mailroom mix-up of an inmate in a facility, totally random act, and there was a procedural means to address such, easily and readily. The Logan case, I believe I cited, spoke to the difficulty in that instance of a due process involved going off into litigation in the court of claims or elsewhere. Hardly an effective way to deal with that situation. We believe that rule is inapplicable. Thank you. All right, thank you. Thanks to both counsel. We'll take the case under advisement, and the Court will stand in recess.